UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
——

WILLIAM MERRIWEATHER,

                    Plaintiff,                Case No. 1:20-cv-1011

v.                                      Honorable Hala Y. Jarbou

HEIDI E. WASHINGTON et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).   The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual allegations

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility.  Plaintiff sues MDOC Director

Heidi E. Washington.  Plaintiff also sues the following LCF staff:  Warden Noah Nagy; Warden Assistant Russ Rurka; Deputy Warden Bryan Morrison; and Mailroom Employees S. Mittelstadt, Amber Long, and Unknown Party #1.

Plaintiff alleges that on September 20, 2018,[1] he sent an email to his daughter and requested her to contact several local journalists on an issue related to his conviction.  Plaintiff did not receive a response, nor did he communicate with his daughter otherwise, until October 3, 2018, when she wrote him to ask, "[A]re you O.K.[?]"  (Am. Compl., ECF No. 10, PageID.42.)  After several further emails with his daughter, Plaintiff pieced together that she never received his September 20 email and that, perhaps unbeknownst to him, an LCF employee blocked his email from sending.

On October 4, 2018, Plaintiff sent a kite to the LCF mailroom asking for the status of his September 20, 2018, email.  Defendant Long responded indicating that Plaintiff's email had been flagged but reviewed by Defendant Unknown Party #1 and sent out the next day, September 21, 2018.  Defendant Unknown Party #1's name was redacted, and Plaintiff requested the individual's name in order to file a grievance against him or her.  Plaintiff alleges that he never received the name, so he filed a grievance, apparently against Defendant Long for her refusal.

On October 24, 2018, Defendant Mittelstadt interviewed Plaintiff while investigating his grievance.  Plaintiff alleges that Defendant Mittelstadt encouraged him to sign off on his grievance, but Plaintiff refused.  He again asserted, this time to Defendant Mittelstadt, that he needed to know the identity of the employee who flagged his email so that he could file a grievance against that individual.  Defendant Mittelstadt informed Plaintiff that policy precluded

---

[1] On several occasions, Plaintiff references the year 1918.  The Court presumes that this is a simple typographical error and has interpreted such references to indicate 2018.

her from identifying that individual.  She allegedly again asked Plaintiff to sign off on his grievance, and he again refused.  Plaintiff alleges that Defendant Mittelstadt eventually "became agitated . . . and stormed from the interview room leaving [P]laintiff seated alone . . . ."  (*Id.*, PageID.45.)

Approximately one week later, on October 30, 2018, Plaintiff sought to send mail to the Michigan Parole Board as legal mail, like he had allegedly done three times previously in 2018.  As legal mail, Plaintiff would have been able to pay for the postage at a time when he had funds available.  However, Defendant Mittelstadt refused Plaintiff's request to categorize the mail as legal.  Because it was not categorized as legal and Plaintiff did not have sufficient funds to send it at that time, the mail was returned to him.

Plaintiff alleges that Defendants retaliated against him, impeded his ability to communicate with his daughter, and violated his due process rights.  For relief, Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## II.    **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.    **Defendants Washington, Nagy, Rurka, and Morrison**

Plaintiff makes no allegations against Defendants Washington, Nagy, Rurka, or Morrison.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir.

2002)).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").  Plaintiff fails to even mention Defendants Washington, Nagy, Rurka, or Morrison in the body of his complaint.  His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").  Accordingly, the Court will dismiss the complaint against them.

## IV.   First Amendment

Plaintiff has alleged that Defendants violated the First Amendment by (1) retaliating against him for filing a grievance, (2) impeding his ability to file a grievance against Unknown Party #1, and (3) restricting his communications with his daughter.

### A.   Retaliation

Plaintiff alleges that Defendant Mittelstadt retaliated against him "in violation of the Eighth Amendment" because after Plaintiff refused to sign off on his grievance, she determined that Plaintiff's mail was not legal mail.  (Am. Compl., ECF No. 10, PageID.46.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes, but it is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (citation omitted).  Plaintiff has alleged nothing of the sort. Therefore, to the extent Plaintiff alleges retaliation under the Eighth Amendment, his claim fails.

Construing Plaintiff's complaint with all due liberality, *see Haines*, 404 U.S. at 520, Plaintiff intends to allege a claim of retaliation under the First Amendment.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints

6

screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).  Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented any facts to support his conclusion that Defendant Mittelstadt retaliated against him because he filed a grievance against some other LCF employee.  Accordingly, his speculative allegation fails to state a claim.

**B.    Grievances**

Likewise, Plaintiff's right to petition government is not violated by Defendants' refusal to provide Unknown Party #1's name for Plaintiff's grievances.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file

institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).  In light of the foregoing, the Court concludes that Plaintiff's allegations related to grievances fail to state a claim.

### C. Communication with Daughter

Plaintiff complains about one instance in which he was prevented from sending an email to his daughter.  Generally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment.  *See Johnson v. Wilkinson*, 229 F.3d 1152 (6th Cir. 2000) (citing *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation).  Plaintiff's inability to send an email to his daughter on one occasion appears to have been an isolated occurrence.  Thus, Plaintiff's allegations are not sufficient to state a First Amendment claim.

V.    **Due Process**

Plaintiff alleges that he was denied due process on two occasions:  first, by categorizing his mail to the Michigan Parole Board as standard mail, and second, by impeding his ability to file a grievance against Unknown Party #1.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff does not clearly identify the liberty interests at issue in his complaint.  Arguably, Plaintiff intends to allege that any interference with his attempts to send mail to the Michigan Parole Board implicates a liberty interest in parole.  However, the Court is unable to identify a liberty or property interest related to Plaintiff's grievance.

A.    **Parole**

Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  In 1987, Plaintiff was convicted of three counts of second-degree murder and one count of assault with intent to commit murder.  *See* MDOC, *Offender Tracking and Information System (OTIS) – Offender Profile*, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=131483 (last visited Mar. 19, 2021).[2]  On each of those four counts, Plaintiff was sentenced to a life term.  *See id.*  Plaintiff's sentence is, presumably, a parolable life term.

---

[2] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence.  The accuracy of the source regarding this specific information "cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also* Paul

There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan

---

F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)).

Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding."  Fed. R. Evid. 201(d) (emphasis added).  Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Because Plaintiff has been sentenced to life in prison, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442 U.S. at 11.  Therefore, the classification of Plaintiff's mail to the Michigan Parole Board as non-legal mail implicates no federal right.  In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.  Accordingly, the Court will his due process claim on this issue.

**B.    Grievance**

Reading the complaint with all due liberality, *Haines*, 404 U.S. at 520, the Court concludes that Plaintiff attempts to assert a violation of his substantive due process rights under the Fourteenth Amendment with regard to his claim related to the grievance.

"Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (internal quotation marks and citations omitted).  "'Substantive due process [] serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used.'"  *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).  "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'"  *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952))).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not

the more generalized notion of "substantive due process," must be the guide for analyzing such a claim.'" *Albright*, 510 U.S. at 266 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment provides an explicit source of constitutional protection to Plaintiff concerning his right to petition the government. As a consequence, Plaintiff's substantive due process claim must be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __March 24, 2021__                      __/s/ Hala Y. Jarbou_____
                                                 HALA Y. JARBOU
                                                 UNITED STATES DISTRICT JUDGE